# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
# GREENSBORO DIVISION

| | |
|---|---|
| VERITIV OPERATING COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 18-877 |
| v. | ) |
| | ) **JURY DEMANDED** |
| | ) |
| MORRISETTE PAPER COMPANY, INC. and | ) |
| BRIAN RIGHTSELL, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Veritiv Operating Company ("Veritiv") brings this action against Defendants Morrisette Paper Company, Inc. ("Morrisette") and Brian Rightsell ("Rightsell") (collectively, "Defendants") and alleges as follows:

## NATURE OF THE SUIT

1. This is a lawsuit brought by Veritiv against Defendants to recover damages and to prevent additional wrongful acts by Defendants against Veritiv. This lawsuit seeks to prevent Rightsell – a former Veritiv sales professional who resigned from Veritiv to work for Morrisette, a direct competitor of Veritiv – from continuing to breach his Non-Compete Agreement and also to prevent Morrisette from tortiously interfering with Rightsell's contractual obligations to Veritiv.

## PARTIES, JURISDICTION, AND VENUE

2. Veritiv is a Delaware corporation with a principal place of business located in Norcross, Georgia. Veritiv is in the highly competitive business of marketing, selling, and distributing paper packaging and print supplies and products throughout North America.

3. Morrisette is a North Carolina corporation with its principal place of business located in Browns Summit, North Carolina. Like Veritiv, Morrisette is in the business of marketing, selling, and distributing paper, packaging, and print supplies and products and competes directly with Veritiv. Morrisette is subject to the jurisdiction of this Court and may be served with process through its registered agent, William F. Morrisette, Jr., at 5925 Summit Avenue, Browns Summit, North Carolina 27214.

4. Veritiv (or one of its predecessors) employed Rightsell from June 28, 2010 until his resignation on August 10, 2018. Rightsell is domiciled in North Carolina, is subject to the jurisdiction of this Court, and, upon information and belief, may be served with process at his primary residence at 500 Chancery Place, Greensboro, North Carolina 27408.

5. This Court has original jurisdiction of this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000.00, excluding interest and costs.

6. Venue is proper in this District and Division under 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to these claims occurred in this District and Division.

## FACTS

### Veritiv's Print and Packaging Business

7. Veritiv, through its operating companies, is a national supplier and distributor of commercial printing and business imaging papers, packaging systems, and facility supplies and equipment, including sanitary and janitorial supplies, paper products, and other related items. Veritiv seeks to provide the best products, value, and service to its customers.

8. In the highly competitive industry of distributing paper, packaging, and print supplies and products, Veritiv has distinguished itself from its competitors by providing a superior product line and service to its customers and through its unique pricing strategies. Veritiv's methods of marketing and distributing its products and its confidential pricing structures are kept highly confidential so that Veritiv can remain competitive in today's marketplace.

9. Veritiv's sales cycle is quite lengthy, such that it takes Veritiv at least three to six months, if not longer, to develop a customer relationship. The process of establishing customer relationships is time-consuming and difficult. In pursuit of developing customer relationships, Veritiv expends considerable capital and resources

dedicated to marketing products to existing and prospective customers, providing support to customers, and cultivating relationships with customers.

10. As a result of Veritiv's investment of substantial time and resources in cultivating customer relationships, Veritiv enjoys longstanding relationships with customers. Indeed, many of Veritiv's customers have been customers of Veritiv or its predecessors for decades. Veritiv has successfully established and maintained these longstanding relationships by offering the highest quality and value services and products.

11. Veritiv has spent a significant amount of time and money cultivating its customer relationships through its team of sales representatives, who are the face of Veritiv to its customers. Because Veritiv's business also contains a service component, the relationships that Veritiv has with its customers are highly dependent on the attention and service that Veritiv gives to them on an ongoing basis. Such attention enables customers to develop confidence in the quality of the products offered and an increased recognition of, and familiarity with, the Veritiv brand as a provider of quality paper and printing products. Indeed, repeat business with its established customers allows Veritiv to maintain its strategic position in this competitive industry.

12. Veritiv also spends extensive time and substantial money identifying and maintaining key customer relationships, designing customer initiatives, determining strategic acquisitions, allocating resources for new technologies and initiatives, creating annual business and marketing plans, and developing and launching new products. For

-4-

example, Veritiv works closely with its customers, suppliers, and vendors to develop customized products and services to meet its customers' particular specifications. By developing such long-term relationships, Veritiv gains a marketing inroad with customers and is able to develop and design customized service packaging that commands a high margin.

13. Moreover, to maintain these longstanding client relationships and develop new relationships, Veritiv expends substantial time, effort, and expense developing confidential business information and trade secrets, which include, but are not limited to: customer lists; detailed information about the identities and requirements of current and prospective customers; detailed information about supplier (and vendor) capabilities and supplier (and vendor) prices; detailed information about the ordering histories of current customers; customer pricing, pricing strategies, and sales and margin data; and business methods, strategies, and plans, including prospective customers and sales strategies and methods.

14. Veritiv's sales representatives are given access to, and are successful by virtue of their access to, Veritiv's confidential pricing, discounts, allowances, margins, and cost information. Veritiv also provides its sales representatives with certain confidential and sensitive product pricing and margin information allowing them to competitively service and provide the best value to customers.

### Rightsell's Employment with Veritiv

15. Rightsell worked for Veritiv (or one of its predecessors) for over 8 years and was most recently a Sales Representative for Veritiv.

16. Rightsell had responsibility for selling Veritiv products and developing and managing customer relationships for Veritiv. To that end, during Rightsell's employment with Veritiv and its predecessors, Veritiv and its predecessors entrusted Rightsell with managing their relationship with numerous customer accounts.

17. Over the course of managing those relationships, Rightsell regularly obtained and used price quotes from vendors and customers. He also handled numerous special projects for Veritiv customers. Accordingly, to facilitate Rightsell's efforts in developing relationships with customers, Veritiv and its predecessors provided Rightsell with access to its trade secrets and other confidential and/or proprietary information.

18. In light of the customer relationships and trade secrets and other confidential or proprietary information to which it entrusted Rightsell, Veritiv's predecessor xpedx (then a division of International Paper Company) required Rightsell to execute a Non-Compete Agreement at the beginning of his employment and in consideration of xpedx's initial offer of employment.

19. Rightsell executed his Non-Compete Agreement on or about June 28, 2010. A copy of the Non-Compete Agreement is attached hereto as <u>Exhibit 1</u> and its terms are incorporated herein.

20. The Non-Compete Agreement forbids Rightsell from using or disclosing Veritiv's confidential information in the following manner:

> 6. **Trade Secrets and Confidential Information.** During the term of this Agreement, Employee will have access to and become familiar with various trade secrets and confidential information of Employer [. . . . .] Employee acknowledges that such confidential information and trade secrets are owned and shall continue to be owned solely by Employer. During the term of his/her employment and after such employment terminates, for whatever reason, termination by Employer, voluntary termination by Employee, or for any other reason, Employee agrees not to use such information for any purpose whatsoever or to divulge such information to any person other than Employer or persons to whom Employer has given its consent.

21. The Non-Compete Agreement also requires that Rightsell return all Veritiv property at the close of his employment:

> 7. **Documents.** Upon termination of employment, for whatever reason, Employee shall not remove from Employer's office any of Employer's books, records, documents, invoices, customer lists, or any copies of such documents, without the prior written permission of Employer; nor shall Employee make any copies of such books, records, documents, invoices, or customer lists. Furthermore, Employee shall immediately return to Employer any such books, records, documents, invoices, customer lists or copies of same that have been removed by Employee at any time.

22. The Non-Compete Agreement further prohibits Rightsell from, among other competitive actions, working for a competitor and soliciting certain Veritiv customers after the close of his employment:

-7-

Case 1:18-cv-00877-CCE-LPA   Document 1   Filed 10/16/18   Page 7 of 17

8. **Restrictive Covenants**. Employee agrees that:

(a) For a period of twelve (12) months after Employee's employment has been terminated by either party, for any reason, Employee will not directly or indirectly solicit, sell or assist anyone in the sale of or provide service relating to any of Employer's products or products similar to those sold by Employer to any person, company, firm, or corporation who is or was a customers of Employer within one (1) year prior to the termination of Employee's employee. Employee agrees not to solicit, sell or assist in the sale of or provide service relating to such accounts on behalf of himself/herself or any other person, firm, company, or corporation.

(b) For a period of twelve (12) months after Employee's employment has been terminated by either party, for any reason, Employee will not directly or indirectly solicit, sell or assist anyone in the sale of or provide service [relating] to any of Employer's products or products similar to those sold by employer to those persons, companies, firms, or corporations who are or were customers of Employer and for whose accounts Employee was responsible while in the employ of Employer. Employee agrees not to solicit, sell or assist in the sale of or provide service relating to such accounts on behalf of himself/herself or any other person, firm, company, or corporation.

(c) Employee agrees that while he/she is employed by Employer and for twelve (12) months after the date of termination by either party, for any reason, of the employment relationship, he/she shall not, directly or indirectly, within 100 miles of Greensboro/Winston-Salem, NC represent, sell, assist in the sale of, provide service relating to, or offer for sale any items of the same or a similar nature to Employer's products, or an item directly competitive therewith, to any of Employer's customers or those customers Employer is then soliciting.

(d) Employee further agrees not to accept employment by a competitor engaged in the sale of such products within 100 miles of Greensboro/Winston-Salem,

NC, for a period of twelve (12) months after the termination by either party, for any reason, of the employment relationship, for the purpose of representing, selling, assisting in the sale of or providing service relating to, or offering such products for sale to Employer's customers or those customers which Employer is then soliciting.

(e) Employee further acknowledges that (1) in the event that his/her employment with Employer terminates for any reason, he/she will be able to earn a livelihood without violating the restrictions of this Agreement and (2) that his/her ability to earn a livelihood without violating such restrictions is a material condition to his/her employment with Employer.

(f) The parties have attempted to limit Employee's right to compete only to the extent necessary to protect Employer from unfair competition and protect the interests of the Employer. The parties further agree that, if the scope or enforceability of the restrictive covenants in this Agreement is in any way disputed at any time, a court or trier of fact may modify and enforce the covenants to the extent that they believe it reasonable under the circumstances existing at that time.

23. Moreover, the Non-Compete Agreement provides in Paragraph 21 that "[t]he period of non-competition as set forth in Paragraph 8 of this Agreement shall not run during the time in which Employee is in violation of the restrictive covenants. In the event that Employer obtains a preliminary injunction or injunction against Employee by a court of competent jurisdiction, the non-competition period set forth in Paragraph 8 of this Agreement shall commence at the time said injunctive is granted, and not from the termination of employment."

24. Following a series of corporate transactions, International Paper sold its xpedx business, which then merged with Unisource Worldwide, Inc. to create Veritiv.

Rightsell's Non-Compete Agreement was assigned to Veritiv, and Rightsell thereafter remained employed by Veritiv until his resignation in 2018.

**<u>Rightsell's Unlawful Competition with Veritiv</u>**

25. On Friday, August 10, 2018, Rightsell voluntarily resigned from Veritiv.

26. Upon information and belief, before Rightsell met with his supervisor on August 10, 2018 to complete his resignation, he secretly and unlawfully contacted several Veritiv customers with the intent of moving the business from Veritiv to Morrisette.

27. After formally resigning from Veritiv, Rightsell began openly working for Morrisette in a virtually identical role selling competitive products on behalf of Morrisette in the same geographic territory where he previously worked for Veritiv.

28. In his new role at Morrissette, Rightsell immediately began soliciting several of Veritiv's established customers, including some of the very same customers that he had previously serviced for Veritiv.

29. For example, since joining Morrisette, Rightsell has directly solicited Teleflex and Precision Fabrics Group, both customers that he previously serviced for Veritiv.

30. Since joining Morrisette, Rightsell has also directly solicited GBF Medical Group, another customer that he previously serviced for Veritiv, which upon information and belief, has already resulted in a sale.

31. As a result of Rightsell's employment with Morrisette and his solicitations of Veritiv's customers, Morrisette successfully converted substantial business from

-10-

Case 1:18-cv-00877-CCE-LPA   Document 1   Filed 10/16/18   Page 10 of 17

longstanding Veritiv customers and is now in a position to convert additional business away from Veritiv. Moreover, on information and belief, Rightsell has solicited and continues to solicit Veritiv's established customers with the intention of converting their business away from Veritiv in the future.

32. On August 16, 2018, in a good-faith effort to obtain Rightsell's compliance with his Non-Compete Agreement, Veritiv sent correspondence to Rightsell, with a copy of the letter to Morrisette, reminding Rightsell of his contractual obligations to Veritiv and demanding that he provide a written acknowledgement of his intentions to comply with the Non-Compete going forward within ten (10) days. Rightsell and Morrisette both ignored this correspondence and neither responded.

33. Despite this attempt by Veritiv to secure Rightsell's compliance with the Non-Compete Agreement without resort to the intervention of this Court, Rightsell continued to remain employed by Morrisette in a directly competitive role in the same geographic territory, and he continued to solicit Veritiv customers in flagrant breach of the Non-Compete Agreement for the benefit of, and with the full knowledge, of Morrisette. Indeed, far from ceasing his unlawful conduct, Rightsell continued to solicit Veritiv customers whom he previously serviced on behalf of Veritiv and successfully convinced them to move their business to Morrisette. As a result of these unlawful solicitations, Veritiv lost revenue and is additionally faced with future loss of revenue and customer goodwill that cannot be remedied by monetary damages alone.

34. Rightsell continues to flaunt his obligations to Veritiv with the full knowledge of Morrisette, and Morrisette continues to enjoy the benefits of the revenue that it wrongfully obtained and continues to obtain as a result of Rightsell's violations of his contractual obligations to Veritiv.

35. As a direct and proximate result of the Defendants' unlawful actions, Veritiv has suffered loss of business from its established customers and is presently faced with the immediate risk of further substantial loss of business from its established customers. Indeed, unless Defendants are restrained from engaging in further unlawful conduct, Veritiv will suffer further immediate irreparable injury to its customer goodwill and relationships for which there is no adequate remedy at law.

### Count I
### BREACH OF CONTRACT
**(against Rightsell)**

36. Veritiv restates the allegations contained in Paragraphs 1 through 35 of this Complaint.

37. Rightsell has continuing obligations to abide by the Non-Compete Agreement and the restrictive covenants contained therein.

38. The Non-Compete Agreement is reasonably necessary for the protection of Veritiv's interests in the customer relationships and goodwill associated with its operations. Further, the Non-Compete Agreement is reasonably necessary to protect Veritiv's confidential information and trade secrets.

39. The Non-Compete Agreement is supported by good and valuable consideration to which Rightsell would not have otherwise been entitled absent his executions of the Non-Compete Agreement.

40. The Non-Compete Agreement is a valid and enforceable contract, Veritiv has fully performed all of its obligations under the Non-Compete Agreement, and all conditions precedent to Veritiv's ability to enforce the Non-Compete Agreement have occurred.

41. The restrictive covenants contained in the Non-Compete Agreement are valid and enforceable. They contain reasonable limitations as to the time, geographic area, and scope of activity to be restrained, and do not impose a greater restraint than necessary to protect Veritiv's goodwill or other business interests.

42. By accepting employment with Morrisette in a position in which he is engaged in the sale of competitive products within the same territory in which he worked for Veritiv, Rightsell has breached the Non-Compete Agreement and, unless enjoined, will continue to do so.

43. By soliciting Veritiv's established customers on behalf of Morrisette, including longstanding Veritiv customers whose accounts he managed during his employment with Veritiv and its predecessors, Rightsell has breached the Non-Compete Agreement and, unless enjoined, will continue to do so.

44. Rightsell's breaches of his obligations under the Non-Compete Agreement have caused and, unless enjoined, will continue to cause, substantial, immediate, and

irreparable injury to Veritiv, including but not limited to the loss of Veritiv's customer goodwill.

45. Veritiv has no adequate remedy at law to Rightsell's breaches of its obligations under the Non-Compete Agreement.

46. As a direct and proximate result of Rightsell's breaches of his obligations under the Non-Compete Agreement, Veritiv has been damaged and Rightsell has improperly gained and benefited and, unless enjoined, will continue to improperly gain and benefit.

<u>**Count II**</u>
**<u>BREACH OF FIDUCIARY DUTY/DUTY OF LOYALTY</u>**
**(against Rightsell)**

47. Veritiv restates the allegations contained in Paragraphs 1 through 46 of this Complaint.

48. While Rightsell worked for Veritiv, he owed Veritiv a fiduciary duty and a duty of loyalty to refrain from performing acts that are competitive with and harmful to Veritiv. This included a duty to work solely for the benefit of Veritiv and not for the benefit of any other person or company or to undermine Veritiv's business interests.

49. Upon information and belief, Rightsell breached his fiduciary duty and duty of loyalty to Veritiv while still employed by Veritiv by attempting to move customers and business from Veritiv to Morrisette.

50. As a direct and proximate result of Rightsell's breaches of his fiduciary duty and duty of loyalty, Veritiv has been damaged.

## Count III
## TORTIOUS INTERFERENCE WITH CONTRACT OR BUSINESS EXPECTANCY
**(against Morrisette)**

51. Veritiv restates the allegations contained in Paragraphs 1 through 50 of this Complaint.

52. Rightsell had and has certain obligations to Veritiv under the Non-Compete Agreement, including, without limitation, Rightsell's obligations to refrain from selling competitive products within the same territory where he worked for Veritiv and to refrain from soliciting certain Veritiv customers.

53. Veritiv had and has a valid expectancy in its continued business relationships with its established customers.

54. Morrisette knew of the existence of the Non-Compete Agreement and additionally knew of the existence of Veritiv's ongoing business relationships with its established customers.

55. Despite its knowledge of Veritiv's contacts and business expectancies, Morrisette interfered with the same by inducing Rightsell's breaches of the Non-Compete Agreement and by disrupting and attempting to disrupt Veritiv's customer relationships.

56. Morrisette acted without privilege or justification.

57. Morrisette's actions have caused and, unless enjoined, will continue to cause, substantial, immediate, and irreparable injury to Veritiv, including but not limited to the loss of Veritiv's customers relationships.

58. Veritiv has no adequate remedy at law to Morrisette's actions.

-15-

Case 1:18-cv-00877-CCE-LPA   Document 1   Filed 10/16/18   Page 15 of 17

59. As a direct and proximate result of Morrisette's actions, Veritiv has been harmed and damaged and Morrisette has improperly gained and benefited and, unless enjoined, will continue to improperly gain and benefit.

**PRAYER FOR RELIEF**

WHEREFORE, Veritiv respectfully requests that the Court enter judgment in Veritiv's favor and enter an Order granting the following relief:

1. Damages adequate to compensate Veritiv for Rightsell's breach of the Non-Compete Agreement, Rightsell's breach of his fiduciary duty/duty of loyalty, and Morrisette's tortious interference with Veritiv's contractual relationship with Rightsell and business expectancy with its established customers;

2. An injunction preliminarily and permanently enjoining Defendants from breaching the restrictive covenants in the Non-Compete Agreement and tolling the running of the time period of the covenants during the time that Rightsell has been in breach of the Non-Compete Agreement;

3. Veritiv's attorney's fees and costs in pursuing this action; and

4. Such other relief as the Court deems just and proper.

This the 16th day of October, 2018

/s/ **Alan W. Duncan**
Alan W. Duncan
N.C. State Bar No. 8736
Hillary M. Kies
N.C. State Bar No. 46176
MULLINS DUNCAN HARRELL
 & RUSSELL PLLC
300 North Greene Street, Suite 2000
Greensboro, NC 27401
Telephone: 336-645-3320
Facsimile: 336-645-3330
aduncan@mullinsduncan.com
hkies@mullinsduncan.com

Robert C. Stevens
Georgia Bar No. 680142
(Notice of Special Appearance
Forthcoming)
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, GA 30309-3962
Telephone: 404-881-5433
Facsimile: 404-457-6227
bstevens@seyfarth.com

*Counsel for Veritiv Operating Company*